# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL LEWIS TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1618 JCH |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed February 10, 2017. (ECF No. 63). The motion is fully briefed and ready for disposition.[1]

## BACKGROUND

Plaintiff Samuel Lewis Taylor is an offender in the Missouri Department of Corrections ("MDOC"). (Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 1). Plaintiff currently is incarcerated at Crossroads Correctional Center ("CRCC"). (Plaintiffs' Statement of Controverted Material Facts in Support of Summary Judgment Motion ("Plaintiff's

---

[1] On March 23, 2017, Plaintiff submitted filings entitled "Plaintiff Motion for Summary Judgment" and "Plaintiffs' Memorandum in Support of Summary Judgment Motion." (ECF Nos. 70, 71). In his motion, however, Plaintiff moves this Court not to grant summary judgment in Defendants' favor, as they "have failed to meet their burden of demonstrating that there is no dispute as to any material fact." (ECF No. 70, P. 1). Plaintiff then asserts in his memorandum in support that he is entitled to judgment as a matter of law because "there exist[s] a genuine issue of material fact." (ECF No. 71, P. 1). With these statements, Plaintiff appears to misunderstand the purpose of a summary judgment motion, which is to show that a genuine issue of material fact does *not* exist. The Court thus treats Plaintiff's motion and materials in support of said motion as documents supporting his opposition to Defendants' motion.

- 1 -

Response to Defendants' Facts"), ¶ 1). At all times relevant to his Complaint, however, Plaintiff was incarcerated at Potosi Correctional Center ("PCC"). (Defendants' Facts, ¶ 1).

At the time of the alleged incidents, Defendants held the following positions at PCC: Jason Crawford was a Corrections Officer II; Kevin Culton was a Corrections Officer I ("COI"); Clive Hedrick was a COI; Michael Miller was an MDOC Corrections Caseworker Manager II; and John Schneedle was a COI. (Defendants' Facts, ¶¶ 2-6).

At all times relevant hereto, Plaintiff had a lawsuit pending against Defendant Michael Miller (and other Defendants not named in the instant Complaint), styled *Taylor v. Miller, et al.*, Case No. 1:11CV174 SNLJ. (Defendants' Facts, ¶ 12).[2] According to Plaintiff, depositions in the *Miller* case were held at PCC on January 16, 2013. (Compl., ECF No. 1, P. 7). Plaintiff maintains the retaliation against him began soon after, and included the following incidents:

- On February 16, 2013, Defendants Hedrick and Schneedle conducted a cell search of Plaintiff's cell. (Plaintiff's Response to Defendants' Facts, second ¶ 76[3]). Plaintiff claims that said Defendants urinated in his pepper container, put cigarette ashes in his food items, and confiscated his cable cord and extension cord. (Defendants' Facts, second ¶ 76).

- On June 23, 2013, Defendants Hedrick and Schneedle again conducted a cell search, and improperly strip searched Plaintiff for their own sexual gratification. (Defendants' Facts, ¶ 86).

- During the June 23, 2013, cell search, Defendants Hedrick and Schneedle confiscated Plaintiff's tennis shoes and a summer sausage. (Defendants' Facts, ¶ 91).

- During the June 23, 2013, cell search, Defendants Hedrick and Schneedle confiscated Plaintiff's legal documents. (Defendants' Facts, ¶ 98).

- After the June 23, 2013, cell search, Plaintiff was escorted to administrative segregation. (Compl., P. 10). Defendant Hedrick then

---

2 *Taylor v. Miller* was dismissed by the Honorable Stephen N. Limbaugh, Jr. on August 23, 2013. (Defendants' Facts, ¶ 13).
3 In their facts, Defendants return to paragraph number 76, in lieu of successive paragraph 78. (*See* Defendants' Facts, P. 11).

- issued Plaintiff a 10.1 conduct violation, stating that by his actions Plaintiff placed himself in violation of rules 10.1: Minor Assault, 12.1: Threats, 19.1: Creating a Disturbance, and 21.1: Insulting Behavior. (Defendants' Facts, ¶ 106-107; Defendants' Exh. AD).

- Plaintiff eventually was sanctioned to over forty days disciplinary segregation, and spent over six months in administrative segregation. (Compl., P. 11). Plaintiff believes that although he did not participate in the hearing for Plaintiff's conduct violation issued after the June 23, 2013, cell search, Defendant Miller influenced the outcome, i.e., Plaintiff's transfer to administrative segregation. (Defendants' Facts, ¶¶ 60, 62).

- In July, 2013, Plaintiff allegedly reported to Defendant Culton that he was vomiting blood. (Defendants' Facts, ¶ 18). Plaintiff claims he called out to Defendant Culton three times to declare a medical emergency while Defendant Culton was handing out food trays. (*Id.*, ¶ 19). According to Plaintiff, Defendant Culton refused to notify medical personnel. (Compl., P. 12).

- After the Honorable Stephen N. Limbaugh, Jr. dismissed *Taylor v. Miller*, Plaintiff was seen by an adjustment committee, of which Defendant Miller was a member. (Compl., P. 13). Plaintiff maintains that in retaliation for his filing of the lawsuit and grievances, he was transferred from PCC to CRCC. (*Id.*.).

- When Plaintiff was transferred from PCC to CRCC in October of 2013, Defendant Crawford refused to include the following personal property of Plaintiff's: legal documents confiscated on June 23, 2013, tennis shoes, extension cord, cable cord, two typing ribbons, watch, crock pot, and 49er's coat. (Defendants' Facts, ¶¶ 34-36).[4]

As stated above, Defendants filed the instant Motion for Summary Judgment on February 10, 2017, asserting that with respect to Defendant Culton, Plaintiff failed to exhaust his administrative remedies, and with respect to all Defendants, Plaintiff failed to provide

---

4 Plaintiff apparently asserts one additional claim with respect to property items allegedly missing upon his transfer to CRCC. (Compl., P. 14). Plaintiff does not contend any of the instant Defendants were involved with the packing of his personal property, however, and so the Court will not address this claim here. Furthermore, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's claims of conspiracy, negligence and replevin for the reasons set forth in Defendants' Suggestions in Support of Defendants' Motion for Summary Judgment ("Defendants' Memo in Support").

affirmative evidence Defendants took adverse action against him and/or acted with a retaliatory motive.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

According to Plaintiff, the claims he raises all stem from alleged retaliation based on his filing of the lawsuit against Defendant Miller. (*See* Plaintiff's Memorandum in Support of Summary Judgment Motion, P. 2; Plaintiffs' Declaration, ECF No. 72-16, ¶ 6).[5] In order to prevail on his Section 1983 claim for retaliation in violation of the First Amendment, Plaintiff must show: "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citation omitted). "The plaintiff's evidentiary burden is a 'heavy' one, and '[m]erely alleging that an act was retaliatory is insufficient." *Taylor v. Miller*, Case No. 1:11CV174 SNLJ, 2013 WL 4504365, at *2 (E.D. Mo. Aug. 23, 2013) (quoting *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007)).

As noted above, Plaintiff claims Defendants retaliated against him because he filed a civil rights lawsuit against Defendant Miller. Defendants do not dispute that by filing the suit, Plaintiff engaged in a protected activity. *See Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009) (quoting *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)) ("'The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.'"). Defendants deny that Plaintiff has shown adverse actions or retaliatory motive, however.

### A. All Defendants Other Than Miller

In their Memo in Support, Defendants assert that with respect to all Defendants other than Defendant Miller, Plaintiff fails to establish the existence of a retaliatory motive.

---

5 Although Plaintiff also vaguely mentions retaliation for his alleged redress of grievances, he never articulates the specific grievances to which he refers, and so the Court will not address this assertion in the instant Order.

(Defendants' Memo in Support, P. 7). In *Taylor v. Miller*, Case No. 4:15CV285 RWS, 2017 WL 513020 (E.D. Mo. Feb. 8, 2017), the Honorable Rodney W. Sippel described Plaintiff's burden with respect to retaliatory motive as follows:

> "To avoid summary judgment, [Taylor] must submit 'affirmative evidence [of] a retaliatory motive.'" Lewis, 486 F.3d at 1029 (quoting Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006)). Though "summary judgment is not often appropriate when motive is at issue," see Sisneros v. Nix, 95 F.3d 749, 752 (8th Cir. 1996), summary judgment is appropriate even when motive is at issue if the plaintiff fails to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998); see also Fender v. Bull, 166 Fed. Appx. 869, 874 (8th Cir. 2996) (citing Crawford-El for the proposition that "even when motive is a critical issue, summary judgment is appropriate if the plaintiff fails to" meet this burden); Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (explaining that though the causal connection between adverse action and protected activity is generally a jury question, "it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury" (quotation marks omitted)). A plaintiff's unsupported belief that officials retaliated against him at someone else's direction because he filed a lawsuit does not create a genuine issue of fact. See Taylor v. Phillips, 2014 WL 251441, at *5 (E.D. Mo. Jan. 22, 2014).

*Taylor v. Miller*, 2017 WL 513020 at *4.

As noted above, Plaintiff alleges that Defendants Hedrick, Schneedle, Culton and Crawford subjected him to a variety of adverse actions, allegedly in retaliation for his filing of a lawsuit against Defendant Miller. Upon consideration, however, the Court finds Plaintiff fails to provide any evidence upon which a jury could find that Plaintiff has carried his burden of proving the pertinent motive. *Crawford-El v. Britton*, 523 U.S. at 600. For example, with respect to Defendants Hedrick and Schneedle, Plaintiff acknowledged during his deposition that he had never seen said Defendants associate with Defendant Miller. (*See* Defendants' Exh. A at

28:20-29:1).[6] Furthermore, while Plaintiff alleged in his Complaint that Defendant Hedrick stated the February 16, 2013, cell search was "done for Michael Miller" (Compl., P. 7), he conversely testified during his deposition that neither Hedrick nor Schneedle made any comments to him at all about Defendant Miller. (*See* Defendants' Exh. A at 28:7-9). With respect to Defendant Crawford, Plaintiff testified that neither Defendant Crawford nor anyone else told Plaintiff he was acting out of retaliation; instead, Plaintiff simply assumed as much based on Crawford's actions. (*Id.* at 73:23-74:5).[7] Finally, in his Answers to Interrogatories Defendant Culton stated under oath that he was unaware Defendant Miller had a lawsuit pending against him (*see* ECF No. 65-4, P. 3), and Plaintiff offers no evidence to contradict this assertion.

"[Plaintiff's] unsupported beliefs—that adverse actions by officials who have no apparent connection to his prior lawsuit must have been taken in retaliation for the lawsuit, that he 'knows' Miller was directing retaliation against him, or that because the defendants work together and know each other, they must have conspired to retaliate against him—do not create a genuine issue of fact from which a jury could find retaliatory motive." *Taylor v. Miller*, 2017 WL 513020, at *5 (citing *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (explaining that speculative and conclusory allegations are insufficient to allow for an inference of retaliatory animus); *Brown v. Hickman*, 2015 WL 1097392, at *11 (W.D. Ark. Mar. 11, 2015) ("Because nearly every otherwise routine decision may potentially be viewed as a retaliatory act, it has been recognized that '[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.'" (quoting *Graham v. Henderson*, 89 F.3d

---

[6] Defendant Miller stated under oath that in 2013, he did not know Clive Hedrick or John Schneedle. (Defendants' Exh. V, ¶ 5).

[7] During his deposition, Plaintiff repeatedly testified that he was never informed any Defendants were acting out of retaliation, but instead simply assumed that to be the motive. (*See* Defendants' Exh. A at 27:6-8, 28:1-6, 52:22-53:10).

75, 79 (2d Cir. 1996)))). Defendants' Motion for Summary Judgment with respect to all Defendants other than Miller must therefore be granted.[8]

B. **<u>Defendant Miller</u>**

In his Complaint, Plaintiff alleges Defendant Miller (a) influenced the outcome of the disciplinary hearing that resulted in Plaintiff's transfer to administrative segregation, and (b) participated as a member of the adjustment committee that ordered Plaintiff's transfer from PCC to CRCC. Upon consideration the Court finds that with these claims, Plaintiff fails to establish that Defendant Miller took adverse actions against him. For example, with respect to the disciplinary hearing, Plaintiff admitted at deposition that Defendant Miller was not the disciplinary officer in charge. (*See* Defendants' Exh. A at 77:19-24). Plaintiff testified he was "sure [Defendant Miller] had some influence over the recommendations", but based his belief solely on the fact that Defendant Miller and Disciplinary Officer Dunn were co-workers. (*See Id.* at 77:25-78:14). The Court finds these unsupported assertions insufficient to raise a genuine issue of material fact as to whether Defendant Miller took an adverse action against Plaintiff in this regard.

With respect to Plaintiff's transfer to CRCC, Plaintiff again offers no evidence supporting his assumption that the transfer was in retaliation for his engagement in protected activity. In contrast, Defendant Miller provides a sworn affidavit stating in relevant part as follows:

> 14. I remember sitting on the administrative segregation committee that recommended transfer for Mr. Taylor in October of 2013.[9]

---

8 In light of the foregoing, the Court need not address Defendants' contention that Plaintiff fails to establish these Defendants took adverse actions against him. The Court notes without deciding, however, that Defendants provide ample evidence the actions were not adverse, but rather non-retaliatory and supported by PCC policy.

9 Plaintiff admitted at deposition that Defendant Miller was not the only one on the administrative segregation committee that recommended his transfer. (Defendants' Exh. A at

> 15. In 2013 I was on the administrative segregation committee and Mr. Taylor was continually requesting protective custody. As a member of this committee, I received and was familiar with all of his requests.
>
> 16. In 2013, Offender Taylor named numerous enemies in the general population and also named numerous enemies in protective custody.
>
> 17. We on the administrative segregation committee steadily ran out of options of where to place Mr. Taylor based on his naming enemies and refusing to sign enemy waivers until our only option was to keep him in administrative segregation as he could not be placed amongst his enemies in general population or protective custody.
>
> 18. Mr. Taylor refused to sign enemy waivers for his numerous enemies in general population and protective custody.
>
> 19. We on the administrative segregation committee thought that it would be best for Mr. Taylor's safety and well-being to transfer him.
>
> 20. If any inmate has too many enemies and blocks themselves in such that they can't go to general population and they can't go to protective custody unit, often they are transferred to another prison for safety purposes.
>
> 21. If an offender is not transferred to another prison, they would have to sit in administrative segregation. We want offenders to have the maximum freedom they are entitled to and not have to sit in administrative segregation simply because they have listed numerous enemies.
>
> 22. In 2013, per transfer policy at Potosi, the recommendation was made to put a transfer in for Mr. Taylor.

(Defendants' Exh. V, ¶¶ 15-22).[10] Defendants further note that Plaintiff himself requested to be transferred because he feared for his life at PCC. (*See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, PP. 13-17 and att. Exhs. A-G). Plaintiff does not

---

78:23-79:2). Instead, there were two other members, Mr. Pierson and Mr. Henson, neither of whom are named as Defendants in the instant suit. (*Id.*).

10 Defendant Miller testified he did not make the ultimate decision as to whether Plaintiff was transferred. (*See* Defendants' Exh. V, ¶ 26).

dispute these allegations, and so again the Court finds Plaintiff fails to establish that the transfer effected by Defendant Miller and others constituted an adverse action against Plaintiff.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 63) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this   18th   Day of August, 2017.

\s\   Jean C. Hamilton
UNITED STATES DISTRICT JUDGE